**Robert P. SHELEY, Petitioner–Appellant,**

v.

**Harry K. SINGLETARY, Respondent–Appellee.**

No. 90–5122.

United States Court of Appeals, Eleventh Circuit.

March 17, 1992.

Prof. Alfredo Garcia, St. Thomas Univ. School of Law, Miami, Fla., for petitioner-appellant.

Angelica Zayas, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before COX, Circuit Judge, DYER and FRIEDMAN *, Senior Circuit Judges.

DYER, Senior Circuit Judge:

In this case the federal district court denied a petition for habeas corpus filed by a Florida state prisoner. The petition of Robert P. Sheley alleges his mental incapacity to enter a voluntary guilty plea, failure of the trial court to provide an adequate hearing to determine competency, and ineffective assistance of counsel. We conclude that there was no error and, ac-

cordingly, affirm the dismissal of Sheley's habeas corpus petition.

## I. BACKGROUND

Sheley's medical history includes a two-month hospitalization in 1967 with prior indications of psychological problems. On February 16, 1973, Sheley was charged in Florida with robbery, possession of a firearm by a convicted felon, and kidnapping. He was held in custody awaiting trial. While in custody, Sheley was given psychotropic medication, prescribed for his mental condition. Sheley's counsel filed a notice on February 27, 1973 of intent to rely on the defense of insanity, based on the alleged facts of defendant's psychosis and schizophrenia. By order of the court, three mental health professionals examined Sheley in jail and prepared reports to evaluate his competency. Dr. Rothenburg, a psychologist, examined Sheley on March 5 and 10, 1973. He concluded that Sheley was incompetent both at the time of the alleged offenses and to stand trial. Dr. Mutter, a psychiatrist, examined Sheley on March 3, 1973. Dr. Reichenburg, a psychologist, examined Sheley on March 15, 1973. Their reports concluded that Sheley was competent.

Sheley and codefendant Richard Pearson were represented by the same counsel, Jack Nageley, who negotiated a plea agreement on behalf of both defendants. At the change of plea hearing on March 21, 1973, counsel abandoned the plea of insanity on behalf of Sheley.

The Assistant State Attorney expressed his concern to the court regarding Sheley's mental competency before presenting the plea agreement. One of the psychological reports in his file stated the opinion of Dr. Rothenburg as to Sheley's mental incompetence. The State had deposed Dr. Rothenburg and stipulated as to his statement. The court conducted an inquiry to reach a determination of Sheley's competence to enter a guilty plea.

---

* Honorable Daniel M. Friedman, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

Dr. Mutter and Dr. Reichenburg were brought before the court, as they were immediately available at the jail examining other prisoners. Each doctor testified that, in his opinion, Sheley was presently able to aid counsel in preparation of his defense and to stand trial, and was able to understand the nature and the consequences of his acts at the time of the alleged offenses. Dr. Mutter had listened to tape-recorded interviews between Dr. Rothenburg and Sheley. Dr. Mutter testified that the tape recording in no way altered his opinion of Sheley's competency. Sheley's counsel asked no questions of Dr. Reichenburg and one question of Dr. Mutter regarding his reasonable medical certainty, but offered no defense evidence. The judge found Sheley competent to stand trial.

The terms of the plea agreement were then presented to the court. The judge asked Sheley and Pearson to identify themselves, and each responded by giving his name. The following colloquy occurred:

THE COURT: Mr. Pearson and Mr. Sheley, before I accept your pleas of guilty, I am required to ask you certain questions. If you do not understand the questions, I want you to ask me to explain them to you, or you may feel free to request your attorney, Mr. Nageley, who is standing by your side, to explain them to you. It is extremely important that you fully understand the questions.

Do you understand the nature of the charges against you?

MR. PEARSON: Yes, sir.

MR. SHELEY: Yes, sir.

THE COURT: That is, you are charged with possession of firearm by a convicted felon, carrying a concealed weapon, robbery?

MR. NAGELEY: Your Honor, I wish you would direct your questions only to the guilty pleas rather than the concealed weapon.

THE COURT: Well, you are charged with robbery and possession of a firearm by a convicted felon. Do both of you understand that?

MR. PEARSON: Yes, sir.

MR. SHELEY: Yes, sir.

THE COURT: Do you fully understand that if I accept your pleas, the maximum punishment to which you will be sentenced, according to the negotiations between your attorney and the State, are a life term on the robbery charge to run concurrent with any existing sentences, and five years on the possession of a firearm charge to run concurrent?

MR. PEARSON: Yes, sir.

MR. SHELEY: Yes, sir.

THE COURT: Do you fully understand these proceedings in which we are engaged in at this time?

MR. PEARSON: Yes, sir.

MR. SHELEY: Yes, sir.

THE COURT: Both of you?

MR. PEARSON: Yes, sir.

MR. SHELEY: Yes, sir.

THE COURT: Do you have any physical or mental defects which would in any way prevent you from fully understanding these proceedings or what we are doing at this time?

MR. PEARSON: No.

MR. SHELEY: No.

THE COURT: Do both of you understand that you are entering this plea of guilty freely and voluntarily because you are, in fact, guilty of these charges and for no other reason?

MR. PEARSON: Yes.

MR. SHELEY: Yes.

THE COURT: Has anyone at all, the police department, State Attorney's Office, anyone, threatened you or forced you to enter this plea?

MR. PEARSON: No.

MR. SHELEY: No.

THE COURT: Do you understand that by pleading guilty you waive your right to trial by jury?

MR. PEARSON: Yes, sir.

MR. SHELEY: Yes, sir.

THE COURT: Do you understand that by pleading guilty you waive your right to be confronted by those that have accused you of these crimes?

MR. PEARSON: Yes.

MR. SHELEY: Yes, sir.

THE COURT: And, do you understand that by pleading guilty you waive your privilege against self-incrimination?

MR. PEARSON: Yes, sir.

MR. SHELEY: Yes, sir.

THE COURT: Have you had ample opportunity to discuss with your attorney, Mr. Nageley, any possible defenses that you may have to these charges?

MR. PEARSON: Yes, sir.

MR. SHELEY: Yes, sir.

THE COURT: Are you fully and completely satisfied with the services of your attorney?

MR. PEARSON: Yes, sir.

MR. SHELEY: Yes, sir.

THE COURT: Do either of you have any fault to find with the manner in which he has handled your case and represented your interests in this case?

MR. PEARSON: No.

MR. SHELEY: No.

THE COURT: Are you satisfied that he has handled this case in your best interest?

MR. PEARSON: Yes.

MR. SHELEY: Yes.

THE COURT: All right, Mr. Nageley, are you completely satisfied, after conferring with your clients, they understand the charges and consequences of their pleas?

MR. NAGELEY: Yes, sir, thoroughly.

The court entered an order adjudging Sheley competent. In accordance with the pleas, Sheley was adjudicated guilty of the two pending charges and sentenced to a term of life imprisonment for robbery and a concurrent term of five years for the firearm possession charge. The State had agreed to abandon the remaining charge.

In 1987, fourteen years after sentencing, Sheley pursued state post-conviction relief under Fla.R.Crim.P. 3.850. Relief was denied and affirmed on appeal. Exhaustion has been conceded by the State. The district court denied Sheley's petition under 28 U.S.C. § 2254, without a hearing, and denied his motion to vacate final judgment because "the petitioner has simply failed to present evidence that 'positively, unequivocally, and clearly generate[s]' a legitimate doubt that the medication given to him before he entered his plea had the effect of rendering his plea involuntary. ... [Petitioner has failed] to present proof substantiating his claim." The district court, in its original order denying the petition, upon an independent review of the record, adopted the magistrate's finding on the competency, medication and inadequacy of hearing claims as being without merit, and upon application of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), adopted the finding that there was no indication of ineffective assistance of counsel.

## II. CONTENTIONS

On appeal, Sheley contends that: (1) he was incompetent to stand trial when the plea was entered; (2) his plea was involuntary because of the level of psychotropic drugs; (3) there was no adequate competency hearing; (4) his counsel rendered ineffective assistance; and (5) the district court erred in denying habeas relief without a hearing.

The State contends that: (1) there was only a "bare allegation" of the level of drugs; (2) an adequate competency hearing was held; (3) under *Strickland,* counsel was not ineffective; (4) no evidentiary hearing on the issue of medication affecting competency was required as there is no *bona fide* doubt raised by petitioner.

## III. DISCUSSION

■ The due process clause prohibits the trial or guilty plea conviction of a person who is mentally incompetent. *Fallada v. Dugger,* 819 F.2d 1564, 1568 (11th Cir.1987) (citing *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)). Sheley raises the issue of his actual competence to enter a voluntary guilty plea. Our task is to review the correctness of the judgment entered by the federal habeas judge who examined the

state proceedings for constitutional error. *See Oyola v. Bowers,* 947 F.2d 928, 932 (11th Cir.1991).

In order to assess the adequacy of the procedures to protect defendant's rights, we are guided by the distinction noted in *Fallada, supra.* This court clarified the relevant issues as follows:

> [T]he issue whether the state trial court should have conducted an evidentiary hearing on the defendant's competence is distinct from the issue whether the defendant was in fact competent to stand trial.... The latter issue can be raised through a request for post-conviction relief even when a bona fide doubt of competency is not raised at trial.... When the issue of competency to stand trial (as against the issue of the right to a hearing on competency) is raised in a request for post-conviction relief the burden on the defendant is higher:
>
>> [A] criminal defendant is entitled to an evidentiary hearing on his claim of incompetency if he presents clear and convincing evidence to create a "real, substantial and legitimate doubt as to [his] mental capacity ... to meaningfully participate and cooperate with counsel...." The standard of proof is high. The facts must "positively, unequivocally, and clearly generate" the legitimate doubt.

819 F.2d at 1567–68 n. 1 (citations omitted).

"Due process requires that an adequate hearing be held on competency when the evidence raises a 'bona fide doubt' as to defendant's competency to stand trial." *Id.* at 1568. The trial court did not ignore this matter when presented with the State's concern as to Sheley's competency. Sheley contends that he was entitled to a further hearing in the district court regarding competence-in-fact.

▇▇ The burden on the petitioner seeking federal habeas relief on the grounds of incompetency is heavy. The standard is: "[c]ourts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial,

and legitimate doubt as to the mental capacity of the petitioner." *Reese v. Wainwright,* 600 F.2d 1085, 1091 (5th Cir.1979) (citing *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir.1973), subsequent opinion, 536 F.2d 1051 (5th Cir.1976)), *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).

Sheley argues that he presented facts as to his mental capacity sufficient to meet this standard. Facts set forth by Sheley are: his history of mental illness; referral to the mental health department of the jail's infirmary; diagnosis of symptoms of psychosis; prescribed treatment by psychotropic medication; and being under the influence of a "double dose" [morning and afternoon doses] of medication at the time of the plea. He asserts that he was unable to follow the conversation between his attorney and codefendant, he was under the impression that the proceedings concerned a change of venue, and he was not aware of either the fact or terms of the plea agreement. Prior to filing his motion to vacate final judgment, Sheley was permitted to supplement the record to include affidavits of his mother, codefendant, and inmates who were housed in his cellblock at the Dade County Jail. Two affidavits of his codefendant are included in this record.

Sheley asserts that his illness and "intoxication" were of such a degree that he could merely repeat in a parrot-like, verbatim manner the responses made by his codefendant at the hearing. However, the thorough questioning of Sheley by the court provided the judge with the opportunity to observe the demeanor and verbal coherence of Sheley at that critical time. *See Maggio v. Fulford,* 462 U.S. 111, 116–17, 103 S.Ct. 2261, 2263–64, 76 L.Ed.2d 794 (1983) (per curiam) (reversing court of appeals for refusal to accept judicial assessments of testimony regarding competency).

▇▇ Treatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial. *See Price v. Wainwright,* 759 F.2d 1549, 1555 (11th Cir. 1985). The administration of drugs is merely a relevant factor in the determination of competence. *Fallada,* 819 F.2d at

1569. Therefore, a "[petitioner] must present evidence demonstrating that the dosage given him affected him sufficiently adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational understanding of the proceedings against him." *Id.* A bare allegation of the level of psychotropic drugs administered to petitioner before entering his plea, as is made here, is insufficient to meet this evidentiary threshold. There was no evidence whether the dosage of the anti-psychotic drugs was sufficiently high to affect him adversely. *See Price,* 759 F.2d at 1555. Sheley has not presented sufficient evidence to support his claim that the medication caused him to be confused and to lack understanding of the proceedings under the legal standard of competence. Therefore, we find that the court's conclusion as to Sheley's competency was "fairly supported by the record." 28 U.S.C. § 2254(d)(8).

■ Second, Sheley argues that the competency hearing in state court was inadequate to afford him the constitutionally required inquiry. He submits that there was a breakdown in the adversary process based on ineffective assistance of counsel, whereby relevant factors relating to his competency were not presented to the court. The defense offered no evidence. Counsel did not inform the court of the difficulty he experienced in consulting with Sheley, nor Sheley's treatment with psychotropic drugs prior to being examined by Drs. Reichenburg and Mutter and prior to his court appearance. Dr. Rothenburg, the psychologist who found Sheley to be incompetent, did not testify. Sheley argues that Dr. Rothenburg's deposition, which was taken by the State and not attended by defense counsel, was not filed with the clerk until after the hearing. The alleged failure of the state court to provide Sheley with a fair hearing is based on petitioner's claim that material facts were not developed at the competency hearing.

The focus, however, is what the trial court did in light of what it knew. *See Drope v. Missouri,* 420 U.S. 162, 174, 95 S.Ct. 896, 905, 43 L.Ed.2d 103 (1975) (fail-ure of court to make inquiry). Two experts testified that Sheley was competent to stand trial. Defense counsel advised that the insanity defense was being abandoned. Sheley was present in court, and the trial judge had an adequate opportunity to observe his demeanor. The court questioned Sheley whether any mental defects prevented him from fully understanding the proceedings. Sheley responded "No". These facts all suggested to the trial court that Sheley was competent. The court in *Drope* noted that "judges must depend to some extent on counsel to bring issues into focus." *Id.* at 176–77, 95 S.Ct. at 906. The transcript of Sheley's hearing supports the conclusion that an adequate hearing was provided to determine his competency based on all relevant, known factors. Therefore, under these circumstances, no further hearing by the district court was required to determine the issue of competency.

Finally, we address the issue of ineffective assistance of counsel. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that the "deficient performance prejudiced the defense". *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Sheley asserts that his counsel failed to conduct a reasonable investigation of the sanity issue, inadequate representation at the competency hearing and conflict of interest in representing both defendants.

■ As set forth in *Strickland,* "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. at 2066. "The court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment". *Id.* "Counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. at 2066.

Here the district court could determine the reasonableness of counsel's conduct based on the state court record. In view of the two doctors' reports supporting Sheley's competency, the weakness of the insanity defense was certainly a relevant factor. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985) (whether counsel's omitted conduct likely would have changed the outcome of trial). Thus, the strong presumption of counsel's conduct being reasonable is not overcome under these facts. *Strickland,* 466 U.S. at 689–91, 104 S.Ct. at 2065–26 (applying a heavy measure of deference to counsel's judgments).

The case *sub judice* is distinguishable from the circumstances in *Porter v. Wainwright,* 805 F.2d 930, 936–37 (11th Cir. 1986), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987), where this court remanded the habeas petition to the district court to hold an evidentiary hearing to find the facts relevant to petitioner's claim of ineffective assistance of counsel. In *Porter,* this court concluded that petitioner had alleged facts that, if proved, would entitle him to relief, and the circumstances as known to Porter's lawyers at the time in question were not reflected in the record. In contrast to *Porter,* the state court record pertaining to Sheley's claim is fully developed.

## IV. CONCLUSION

Since Sheley claims that he was incompetent at the time of his plea, he is only entitled to an evidentiary hearing by the habeas court if he presents clear and convincing evidence to create a real, substantial and legitimate doubt as to his mental capacity to meaningfully participate and cooperate with counsel. The facts must positively, unequivocally and clearly generate the legitimate doubt. Sheley's petition does not meet this standard.

With respect to medication—a hearing is necessary only if there is a *bona fide* doubt regarding its effect on the defendant's competence, *i.e.,* that the dosage given him affected him sufficiently as to *raise a doubt* of his ability to consult with his lawyer and to have a rational understanding of the proceedings against him. The bare allegations made here are not sufficient.

As to ineffective counsel, we conclude that there was enough to show that counsel did not want to go to trial after the two doctors found his client competent. Therefore, he made a reasonable tactical decision.

Petitioner failed to show that he was incompetent, that his state court competency hearing was inadequate or that his trial attorney's conduct fell below an objective standard of reasonableness and that such deficient performance prejudiced his defense. We conclude that there was no error and, accordingly, the dismissal of Sheley's habeas corpus petition is

AFFIRMED.